IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TIMOTHY R. MUELLER,

    Plaintiff,

v.                                                                                  Civil Action No. **3:18CV528**

**ANTOINETTE BENNETT**, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Timothy R. Mueller, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The action proceeds on Mueller's Particularized Complaint ("Complaint," ECF No. 13).[2] Mueller names as defendants: Antoinette Bennett, Probation Officer; Gayle Parrish, District 32 Deputy Chief Probation Officer; Jeremiah Fitz, District 32 Chief Probation Officer; Randi Lanzafama, Sex Offender Coordinator for the Virginia Department of Corrections ("VDOC"); Harold Clarke, Director of the VDOC; and, C. Benton, Probation and Parole Case Officer (collectively "Defendants").[3] The matter is before the Court on Defendants'

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Mueller's submissions.

[3] With respect to the defendants named in this action, by Memorandum Order entered on August 8, 2019, the Court directed the Clerk to amend the docket to add the names of three previously

Motion to Dismiss. (ECF No. 21.) Mueller has responded. (ECF No. 24.) For the reasons stated below, the Motion to Dismiss (ECF No. 21) will be GRANTED.

## I. STANDARD FOR MOTION TO DISMISS

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (internal quotation marks omitted) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), *aff'd*, 36 F.3d 1091 (4th Cir. 1994). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This

---

unnamed defendants, all of whom Mueller had originally identified by their position titles. (ECF No. 25, at 1.) Specifically, the Court explained that when counsel entered an appearance in this matter, counsel had appeared "on behalf of District 32 Deputy Chief Probation Officer (Gayle Parrish), District 32 Chief Probation Officer (Jeremiah Fitz), and Probation and Parole Case Officer (C. Benton)." *Id.* Further, in addition to the above-listed defendants, Mueller originally named two other unnamed defendants, "Probation and Parole Central Regional Director" and "Deputy Director of Community Corrections;" however, by Memorandum Order entered on October 9, 2019, the Court dismissed these Defendants without prejudice after Mueller failed to show good cause why they should not be dismissed without prejudice as a result of his failure to serve them within the applicable 90-day period. (ECF No. 28, at 1.)

principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

3

## II. MUELLER'S ALLEGATIONS

In his Complaint, Mueller alleges that he "was placed on supervised probation under the authority of the VDOC [Probation and Parole] Office of District 32 [in] Henrico County, Virginia . . . in December of 2015 and continued under said supervision until December 16th, 2016." (Compl. ¶ 1.) While on probation, Mueller "was supervised by Defendant Bennett as [the] case officer." (*Id.* ¶ 2.) "Defendant Bennett knowingly applied [the below-listed] conditions" on Mueller while he was on probation. (*Id.* ¶ 26.) Defendants Parrish and Fitz "were responsible for the day to day operations of [the] District 32 [Probation and Parole] Office, including the actions of Defendant Bennett." (*Id.*) "Defendant Lanzafama was responsible for creating and ensuring the sex offender special conditions were implemented and enforced." (*Id.*) Defendant Clarke was "responsible for the operations of all [probation and parole] offices and officers and exercised authority in creating and promulgating all probation conditions." (*Id.*)

With respect to the conditions imposed on Mueller while he was on probation, Mueller alleges that he was required "to follow a list of some 20–30 special conditions that were placed upon sex offender probationers as a matter of course." (*Id.* ¶ 3.) Specifically, Mueller alleges:

> One condition of [his] probation was that he could not attend church services except with the express permission of his probation officer and treatment provider, the creation of a safety contract, and assignment of a chaperone who would accompany [him] at all times within the church building, including to the restroom.
> [Mueller] requested permission to attend Catholic Mass and was denied.
> [Mueller] was given permission to attend non-Catholic religious services.
> Attendance at Catholic Mass is compulsory for [Mueller] under penalty of grave sin according to [Mueller's] sincerely held religious belief.
> The condition [regarding not attending church services] was not written down or in any way properly promulgated and was only made known to probationers when they violated said condition, and were held at fault for [the] violation.
> Upon information and belief, the condition [regarding not attending church services] is binding upon all sex offender probationers in the Commonwealth of Virginia.

4

> As a condition of probation, [Mueller] was prohibited [from having] contact with his daughter.
>
> [Mueller] was to be allowed contact with his daughter until he violated probation in 2015. The violation did not involve anything to do with his daughter or any other minor.
>
> The Sex Offender Treatment Provider may place any other such conditions as they deem appropriate upon probationers, including [Mueller], violation of which would lead to incarceration or other deprivations of liberty on the authority of the supervising probation officer.
>
> [Mueller's] sex offender treatment history, including multiple psychosexual evaluations, including Abel screenings, indicate that [he] does not pose a risk to his daughter or to any minor, especially of his daughter's age.
>
> [Mueller was] require[d] as a condition of probation to undergo periodic polygraph testing for the purpose of determining compliance with probation rules and conditions.
>
> [Mueller was] require[d] to submit to penile plethysmograph testing as a condition of probation.
>
> Upon information and belief, penile plethysmograph (PPG) testing involves attaching a device to a subject's penis, then showing the subject pornographic images.
>
> [Mueller's] sincerely held religious beliefs forbid the viewing of pornography, and viewing such would subject [him] to severe emotional distress.
>
> [Mueller], as a condition of probation, [was] prohibited from possessing or consuming alcohol, even if for medical, religious, or culinary purposes.
>
> [Mueller's] sincerely held religious beliefs involve the consumption of sacramental wine during services, a practice further enjoined upon [Mueller] by his Church.
>
> [Mueller] has absolutely no history or problem of substance abuse.
>
> [Mueller] has suffered severe mental, emotional, and spiritual harm by not being allowed to attend Catholic Mass.
>
> [Mueller] has suffered severe mental, emotional, and spiritual harm by not being allowed to consume alcohol during religious activities.
>
> [Mueller] has suffered severe mental and emotional harm by not being allowed contact [to have] with his daughter.
>
> Should [Mueller] violate any probation condition, he is subject to imprisonment or other deprivation of liberty.

(*Id.* ¶¶ 4–24 (paragraph numbers omitted).)

Based on the foregoing allegations, the Court construes Mueller to raise the following claims for relief:

5

Claim One: Defendants violated Mueller's First Amendment[4] right to the free exercise of religion when they (a) "forbid[] . . . [Mueller] to attend Catholic Mass," (*id.* ¶ 25), and (b) "forbid[] . . . [Mueller the] religious use of alcohol." (*Id.* ¶ 29.)

Claim Two: Defendants' actions violated the Establishment Clause of the First Amendment because Defendants "forbid[] . . . [Mueller] to attend Catholic Mass, while allowing him attendance at non-Catholic religious services." (*Id.* ¶ 27.)

Claim Three: Defendants placed a substantial burden on Mueller's exercise of his religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[5] by (a) "forbidding . . . [Mueller] to attend Catholic Mass," (b) "forbidding . . . [Mueller the] religious use of alcohol," and (c) "forbidding . . . [Mueller] to attend Catholic Mass, while allowing him attendance at non-Catholic religious service." (*Id.* ¶¶ 25–32.)

Claim Four: The conditions imposed on Mueller while he was on probation constituted cruel and unusual punishment in violation of the Eighth Amendment.[6] (*Id.* ¶ 33.)

Claim Five: Defendants violated Mueller's Fourteenth Amendment[7] right to equal protection when they imposed the above-discussed probation conditions on Mueller, "but not [on] other similarly situated probationers." (*Id.* ¶ 35.)

Claim Six: The conditions imposed on Mueller while he was on probation violated his right to the freedom of association under the First Amendment.[8] (*Id.* ¶ 37.)

---

[4] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[5] 42 U.S.C. § 2000cc–1(a).

[6] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[7] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[8] Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble." U.S. Const. amend. I.

Claim Seven: The requirement that Mueller submit to polygraph testing while on probation violated Mueller's "right against self-incrimination" under the Fifth Amendment.[9] (*Id.* ¶ 39.)

Claim Eight: Defendants violated Mueller's right to due process under the Fourteenth Amendment[10] when, "as a matter of policy," Defendants "defer[red] to the sex offender treatment providers," which "meant that the treatment provider . . . could essentially order [probationers] to be held in violation of probation," and "[r]emoving this authority from one acting under color of state law to one not acting so, deprived [Mueller] of the ability to properly challenge treatment provider rules." (*Id.* ¶ 41.)

Mueller seeks monetary damages, as well as declaratory and injunctive relief. (*Id.* ¶¶ 42–48.)

## III. ANALYSIS

Defendants argue that Mueller's claims should be dismissed because, *inter alia*: (1) Mueller's claims under 42 U.S.C. § 1983 are time-barred, (2) Mueller cannot state a claim under RLUIPA because he was not in an "institution" while on probation, and (3) assuming Mueller can assert a claim under RLUIPA, he is unable to recover monetary damages and his claims for injunctive and declaratory relief are moot. (Mem. Supp. Mot. Dismiss 5–9, ECF No. 22.)

### A.  Section 1983 Claims

Because there is no explicit statute of limitations for 42 U.S.C. § 1983 actions, the courts borrow the personal injury statute of limitations from the relevant state. *Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01–243(A) (West 2020). Therefore, Mueller was required to have filed his Complaint within two years from

---

[9] "No person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

[10] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

when the underlying claim accrued. In determining when a cause of action accrues, "even though the limitation period is borrowed from state law, the question of when a cause of action *accrues* under 42 U.S.C. § 1983 remains one of federal law." *Nasim*, 64 F.3d at 955 (emphasis in original) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). "A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, No. 3:08CV138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (quoting *Nasim*, 64 F.3d at 955). Accordingly, the Court must determine when Mueller became aware or was on notice of the probation conditions imposed on him.

Mueller's claims accrued as of December of 2015 when Mueller was placed on supervised probation, which was also when Defendants imposed the allegedly unconstitutional probation conditions on Mueller. Therefore, for Mueller's claims to be timely, he needed to file this action by December of 2017. The record in this matter indicates that the mailroom at Mueller's correctional institution received his original complaint on July 26, 2018. (*See* ECF No. 1–1, at 1.) The Court deems the action filed as of that date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). Accordingly, the present action is untimely.

Mueller responds that the action is timely, arguing: "[a]s evidenced in my Complaint, I was on probation from December 2015 to December 2016, [and] was subject to the challenged rules and behaviors throughout the entirety of this period as they were a part of the supervision schema I was subjected to." (Resp. 1, ECF No. 24.) Mueller contends that the continuing violation doctrine applies, arguing that "[i]n cases where a person is subjected to continuing discrimination or continuing conduct of another, the cause of action does not start upon the first occurrence as each action of a constant and continuing behavior would provide a separate cause of action." (*Id.*

(citations omitted).) Mueller contends that "[e]ven a conservative reading of the facts would place the cause of action as the last day in which [his] rights were violated, that is the last day of probation: December 16, 2016." (*Id.*)

Under the continuing violation doctrine, "when a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff under certain circumstances may allege a 'continuing violation' for which the statute of limitations runs anew with each violation." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (quoting *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166–67 (4th Cir. 1991)). "In other words, if the plaintiff can show that the illegal act did not occur just once, but rather 'in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation.'" *A Society Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (alteration in original) (quoting *Nat'l Advert. Co.*, 947 F.2d at 1167). However, "continual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation." *Id.* (quoting *Nat'l Advert. Co.*, 947 F.2d at 1166).

Here, Mueller became aware of the complained of probation conditions when he was placed on probation in December of 2015. These conditions remained imposed on Mueller for the duration of his probation. Therefore, although Mueller disagrees with the "continual ill effects" from the original alleged violation (i.e., the imposition of the probation conditions when he was placed on probation), the fact that these conditions remained imposed on him for the duration of his probation does not constitute a continuing violation. *Id.* (quoting *Nat'l Advert. Co.*, 947 F.2d at 1166); *see Cibula v. Fox*, 570 F. App'x 129, 136–37 (3d Cir. 2014) (concluding that the plaintiff's claims regarding his classification as a sex offender accrued when he received the classification and the continuing violation doctrine did not apply because "the 'mere existence of

9

the [allegedly unconstitutional condition] does not amount to a continuing violation'" (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001))); *Romero v. Lander*, 461 F. App'x 661, 667 (10th Cir. 2012) (affirming the district court's finding that the plaintiff's claims were time-barred because "all the constitutional claims asserted in [the plaintiff's] amended complaint relate[d] to two injuries—his classification as an S–4 sex offender and the requirement that he admit to being a sex offender to participate in [a treatment program]," and explaining that the plaintiff "knew of these injuries in 2000, and his constitutional claims based on those injuries accrued at that time"); *Easterling v. Thurmer*, No. 14–CV–1392, 2015 WL 9463156, at *2 (E.D. Wis. Dec. 28, 2015) (concluding that the plaintiff's claims regarding his eligibility for visitation with his daughter accrued when he was notified of his ineligibility because "the plaintiff was notified on a specific date that his request for visitation with his daughter was denied, and it was on that date that the plaintiff became aware that an alleged violation of his rights had occurred," and "the plaintiff's continued ineligibility to visit with his daughter [was] not a fresh act on the part of these defendants each day; it [was] the natural consequence of the discrete act that occurred when [the defendant] denied the plaintiff's request" (citations omitted)); *Rothe v. Sloan*, No. 14–cv–03175–CMA–KMT, 2015 WL 3457894, at *2 (D. Colo. May 29, 2015) (rejecting plaintiffs' claims that the continuing violation doctrine applied to their claims regarding the requirement that they register as sex offenders because "the injury does not 'continue' throughout time, but accrues at the point at which an individual is required to register as a sex offender" (citation omitted)).

Moreover, although Mueller contends that "[t]he condition [regarding not attending church services] was not written down or in any way properly promulgated and was only made known to probationers when they violated said condition, and were held at fault for [the] violation," (Compl. ¶ 8), Mueller fails to allege any facts about when he learned of this condition. *See Cibula*, 750 F.

App'x at 136 ("In order to benefit from the [continuing violations] doctrine, a plaintiff must establish that the defendant's conduct is 'more than the occurrence of isolated or sporadic acts.'" (some internal quotation marks omitted) (alteration in original) (quoting *Cowell*, 263 F.3d at 292)). As such, Mueller fails to allege any facts to suggest that he learned of this condition within the statute of limitation.

Accordingly, the statute of limitations bars Mueller's § 1983 claims. Defendants' Motion to Dismiss is GRANTED with respect to Mueller's § 1983 claims. Mueller's § 1983 claims regarding attendance at church services, which are set forth in Claims One (a) and Two, and, in part, in Claims Four, Five, and Six, will be DISMISSED WITHOUT PREJUDICE. Claims One (b), Seven, and Eight and the remaining parts of Claims Four, Five, and Six will be DISMISSED WITH PREJUDICE.

### B. RLUIPA Claim

Defendants first argue that Mueller's RLUIPA claim must be dismissed because he "was not 'residing in or confined to a covered institution to invoke the protections of [RLUIPA],'" and "RLUIPA does not provide a claim for persons that have been released from incarceration and are on supervised release." (Mem. Supp. Mot. Dismiss 7 (some internal quotation marks omitted) (quoting *Khatib v. Cty. of Orange*, 639 F.3d 898, 902 (9th Cir. 2011)).) Mueller contends that "[s]upervised probation in Virginia is an 'institution' within the cognizance of . . . RLUIPA [because] it . . . [i]s an arm of the State itself and . . . [i]s a correctional facility." (Resp. 2.) In support of this assertion, Mueller argues that "[w]hile there are no walls like a prison, [supervised probation] is just as confining." (*Id.*) Mueller points to no authority to support this position.

RLUIPA provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this

title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
   **(1)** is in furtherance of a compelling governmental interest; and
   **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). As relevant here, an "institution" for the purposes of a RLUIPA claim is defined as follows:

**(1)** The term "institution" means any facility or institution--
   **(A)** which is owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State; and
   **(B)** which is--
      **(i)** for persons who are mentally ill, disabled, or retarded, or chronically ill or handicapped;
      **(ii)** a jail, prison, or other correctional facility;
      **(iii)** a pretrial detention facility . . . .

*Id.* § 1997(1). Here, while on probation, Mueller was not "residing in or confined to an institution," *id.* § 2000cc-1(a), because he was not in "any facility or institution" as defined in § 1997. *See id.* § 1997(1). Therefore, Mueller is unable to state a claim under RLUIPA.

Furthermore, even assuming that Mueller can assert a claim under RLUIPA, dismissal of his RLUIPA claim is warranted because, as explained below, Mueller is unable to recover monetary damages and his claims for injunctive and declaratory relief are moot. In his Complaint, Mueller seeks injunctive and declaratory relief, as well as monetary damages, (Compl. ¶¶ 42–48), and he indicates that he brings this action against Defendants in their individual and official capacities. (*Id.* at 1.) It is settled that RLUIPA does not authorize a private cause of action for money damages against state officials in their official or personal capacities. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011) (holding that state officials sued in their official capacities enjoy Eleventh Amendment Immunity against RLUIPA claims for damages); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (concluding that, as an exercise of Congress's spending clause authority, RLUIPA does not authorize claims for monetary damages against state officials in their

individual capacities); *see Haight v. Thompson*, 763 F.3d 554, 569–70 (6th Cir. 2014) (concluding that, as an exercise of Congress's authority under the Commerce Clause, RLUIPA did not authorize claims for monetary damages against state officials in their individual capacities). Accordingly, Defendants' Motion to Dismiss will be GRANTED with respect to Mueller's demands for monetary damages under RLUIPA.

Additionally, Mueller is not entitled to pursue a claim for injunctive and declaratory relief under RLUIPA because the termination of Mueller's probation on December 16, 2016 moots his claim for injunctive and declaratory relief. *See Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the out-come." *Id.* at 286 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "[F]ederal courts have 'no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). Thus, "[o]nce an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of the claim."[11] *Id.* at 287. Neither Mueller, nor the record, establishes ongoing interference with his practice of his religion from the imposed

---

[11] If Mueller were to demonstrate that the action is "capable of repetition, yet evading review," his claim may not be moot. *Incumaa*, 507 F.3d at 288–89 (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). Nevertheless, such a showing requires a "demonstrated probability" that the allegedly improper action "will recur again, and to the same complainant." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 483 (1982)). Mueller argues that "he is to be released on November 5, 2020," and "[a]t [that] time, he will be subject to the same rules as before." (Resp. 2.) However, as discussed herein, while on probation, Mueller will not be "residing in or confined to an institution," as is required to state a claim under RLUIPA. 42 U.S.C. § 2000cc–1(a). Moreover, Mueller fails to show that there is a "demonstrated probability" that his potential, future probation conditions will be the same as the challenged probation conditions. *Incumaa*, 507 F.3d at 289 (quoting *Murphy*, 455 U.S. at 483).

13

probation conditions. Therefore, Defendants' Motion to Dismiss will be GRANTED with respect to Mueller's demands for injunctive and declaratory relief under RLUIPA because such claims are moot.[12] Mueller's claim under RLUIPA, which is set forth in Claim Three, will be DISMISSED WITH PREJUDICE.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 21) will be GRANTED. Mueller's § 1983 claims regarding attendance at church services, which are set forth in Claims One (a) and Two, and, in part, in Claims Four, Five, and Six, will be DISMISSED WITHOUT PREJUDICE. Claims One (b), Seven, and Eight and the remaining parts of Claims Four, Five, and Six will be DISMISSED WITH PREJUDICE. Mueller's claim under RLUIPA, which is set forth in Claim Three, will be DISMISSED WITH PREJUDICE. The action will be DISMISSED.

An appropriate Final Order shall issue.

/s/ 
Roderick C. Young
United States Magistrate Judge

Date: March 23, 2020
Richmond, Virginia

---

[12] The Court notes that the termination of Mueller's probation also moots his request for injunctive and declaratory relief with respect to his other claims.